May it please the court, Elisa Drew on behalf of the petitioner Jose Dominguez. To begin, I need to please address the jurisdictional issue. This court has jurisdiction to review the denial of a motion to reconsider by the Board of Immigration Appeals for abuse of discretion. This is a highly deferential standard, we understand, and the review is limited only to the motion to reconsider. The court will find an abuse of discretion on the part of the board if the board's response was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis. After the board dismissed the petitioner's appeal on October 2nd, without addressing the CAT arguments, the Convention Against Torture Arguments, Petitioner Dominguez opted to submit a motion to reconsider. The petitioner understands that nothing tolls the appeal for the immigration benefits, but this was a decision made by the petitioner at the time to submit the motion to reconsider. The motion to reconsider must ask the board to consider additional legal arguments, a change of law, or any argument that was overlooked. And we believe that in our motion for reconsideration, in part, we asked the board to consider arguments that it had not addressed, specifically those arguments pertaining to the denial of the Convention Against Torture. The petitioner was not only republishing these arguments in order to receive a different answer, but was publishing these arguments in order to receive an answer. This distinguishes it from other cases cited by the government where, in fact, we did present something that had been overlooked to the Board of Immigration Appeals. The brief to this court asked the review of that motion to reconsider where, again, the board failed to address the arguments pertaining to CAT. And those were the arguments... I'm looking at the board's No, no. Well, Your Honor, I have to reference the board's original decision to the extent that it did not address the Convention Against Torture arguments. I'm looking at the last paragraph. Yes. It says we find no error with the immigration judge's determination that, in essence, he doesn't qualify for relief under the Convention Against Torture. Right. Your Honor... So what's missed? Okay, but again, the standard for abuse of discretion, if we're going back to that and then it's reiterated in the motion to reconsider, would be that the board responded without a rational explanation. It's not the board responded without a rational conclusion. There was no explanation and there were arguments that were specifically raised regarding... The actual scenario is too speculative, adopting, in essence, the immigration judge's findings. It did. So I understand you disagree, but... We do disagree. And Your Honor, we had distilled very specific arguments regarding the CAT claim. In the first place, we had stated that... Well, my problem is that I guess I'm looking for an attack on the motion to reconsider being denied. Yes. And I'm not finding it. Well, what we tried to explain, Your Honor, and probably not that successfully, is that the motion to reconsider constituted an abuse of discretion because there was not an explanation to the CAT arguments that were raised again. They were not... We felt that the explanation as such was insufficient. There was not an explanation. In fact, we would maintain... Actually, I think your case is extremely weak. You really think that if his uncle, that if he went back... Because he doesn't have to go back to his uncle's house, right? Mexico is a large country. Now, do you think that if he goes back and the uncle says that he wants him to know, you think the uncle is going to kill him? Kill his nephew? This is what the petitioner credibly... I find that implausible. Also, why does he have to go back to that part of Mexico? He had explained that in that part of Mexico was the only place where his family was, Your Honor. Yes, I know. But if the family is going to kill him, if he doesn't join their cartel, maybe he should go to a part of Mexico where he doesn't have a family. Yes. Yes, Your Honor. And there are 100 million people in Mexico, right? Yes, Your Honor. And that... There are plenty of places where your family is not living and they're not going to come and kill you, right? Yes, Your Honor. But I would respond... We get some very compelling cases of people resisting deportation because of danger in their country of origin, but I don't see the evidence that he faces any danger. Your Honor, he testified credibly to the immigration judge who believed his story. You haven't answered my question. Why does he have to go back and live with his... or live next... near his uncle and risk being killed by his uncle? He had explained that that was the only place that he felt that he could go. It wasn't to live with his uncle. Now, you explain that to me. The only place in Mexico he can go, it's a huge country. Why can't he go to Mexico City, you know, population 20 million or, you know? Your Honor, it's a huge country. And I'm explaining that the petitioner felt that he needed to go with family. He has never been in Mexico before. He's never been in Mexico City. He's never been in any part of Mexico. And he felt that at least initially, he would need to be with the aunt, who was the only person that he knows in Mexico. And to the extent that he would be there, that his presence would be known, that would be dangerous. Also, we had presented that in the country report, the hand of all of the drug cartels is very heavy throughout Mexico. This is a violence that is rampant, it's pervasive, and the petitioner does feel... Does that mean that nobody can be deported to Mexico because it's such a lawless place? Your Honor, I... What's special about him? I don't understand. What's special about him is that he is in a unique position of being related, being known, to a high-ranking member of the Cetas. And that does place him in a different position. And to answer your question more fully, Your Honor... That's, of course, a different argument from going down and being threatened by his uncle. Now you're saying this cartel is so powerful that they keep, what, they keep tabs on people who are being deported to Mexico? I don't get that. I didn't argue that they kept tabs on people reporting to Mexico, Your Honor, without due respect. How is the cartel going to... If he's deported to Mexico, how is the cartel going to discover that he's back, that he's in Mexico? Through the relations. He's never been there before, has he? He had never been before. So how is he going to be recognized as a potential... I mean, what do they do? Does this cartel... I mean, obviously, there are thousands of people crossing the border from the United States to Mexico every week. So is this cartel keeping a record of everybody who comes across? See whether it might be someone who had some link to a drug cartel? No, Your Honor. Why would he just vanish into Mexico? I don't think they're keeping a record. How would they find him? They would know through the relatives. He has other uncles there. But he wouldn't have anything to do with the relatives if he's cautious. He won't have anything to do with them. That's dangerous. They may kill him. All right, so he'll go to another part of Mexico, and he is Mexican. So he will, you know, create a life for himself. Well, Your Honor, we had argued that he wouldn't be able to create a life for himself that easily. He wouldn't blend in that easily. No, because you're not making a... You're not being persuasive. There is nothing to keep him... He can change his name if he wants. There's nothing to keep him from locating in a part of Mexico remote from his uncle. Now, the alternative is, yeah, he'll go and stay with his uncle and aunt. They're not going to murder him. That would be a little unusual. Murder their nephew. Even in Mexico, that must be unusual. Okay, well, thank you, Ms. Drew. Ms. Carter? Thank you, Your Honor. Good morning, Your Honor. May it please the Court. Margot Carter for the United States Attorney General. I wanted to note at the outset, the petitioner pointed out or argued that the board did not address the Convention Against Torture claim, but as I think we covered, the board did address it, pages 24 and 25 of the record, and they addressed it again in the motion to reconsider. It's important to note that the only issue in this case really is whether the board abused its discretion in denying the petitioner's motion for reconsideration. In order to show that the board abused its discretion, the petitioner would need to show that the board acted in a manner that was arbitrary, irrational, or rested on an impermissible basis, and the petitioner cannot show that in this case, where the underlying decision, the board's decision in this case on reconsideration, rightly determined that the petitioner failed to identify any error of law or fact in the board's previous decision. And in fact, in the motion to reconsider, the petitioner identified no error of law or fact in the board's previous decision. In the petitioner's brief to this Court, the petitioner focused on the underlying merits of the case, which are not before this Court, and as we argued in our brief. Furthermore, addressing the petitioner's point regarding credibility, the petitioner has argued that the petitioner's credibility should have been given greater weight, but this is not an error of law or fact in the board's decision. If the Court has nothing for us further, we would just urge that the petition for review be denied, and does the Court have anything further? Okay, thank you, Ms. Warren. Ms. Drew, do you have anything further? I had only wanted to say, Your Honors, that with respect to the error, we did ask the board to consider all of the arguments that had been made in the motion to reconsider, and that, in fact, is one of the basis for the motion to reconsider. It was a flaw, as we had deemed it, in terms of not responding fully or explaining our particular arguments for Kat, which had to do with the government's role as a government actor in Kat, and we thought that we had some pretty persuasive arguments in there to make, stating that despite any recent efforts that the government of Mexico has made to address the rampant gang-related violence, that it was speculative how far the government had gone. The board didn't respond to that, and as counsel pointed out, indeed, we had also asked the board to address how a petitioner's credibility can be weighed when, in fact, he does not have evidence, and asked the board to note that when a petitioner is detained, there's far less time to prepare his case, far less time to obtain documentation, because everything is at such an accelerated rate. But I thank you very much. Okay. Thank you very much.